Daniel ANDERSON, Jr., Poitier L. Anderson, Mose Emanuel Bailey, et al., Plaintiffs–Appellants,

v.

DOUGLAS & LOMASON CO., et al., Defendants–Appellees.

Nos. 87–4095, 87–4616.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1988.

Richard T. Seymour, Lawyers' Comm. for Civil Rights, William L. Robinson, John P. Relman, Stephen L. Spitz, Washington, D.C., Nausead Stewart, Jackson, Miss., for plaintiffs-appellants.

Robert N. Godfrey, George K. McPherson, Atlanta, Ga., Clell G. Ward, Greenville, Miss., for Douglas & Lomason Co.

Before BROWN, POLITZ and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The appellants seek a preliminary injunction in this Title VII class action filed by twenty-seven black present and former employees and applicants for employment of defendant Douglas & Lomason Co. (D & L). They allege that D & L intentionally discriminated against blacks in its hiring and promotion practices.[1] Each party offers experts whose testimony, based on statistics, supports the party that hired them. The plaintiffs ask this court to grant preliminary injunctive relief that would regulate the hiring practices of D & L and have the effect of requiring D & L to hire more blacks. We hold that in this case, where blacks comprise 74.6% of the manufacturing workforce of a company in an area where the entire manufacturing workforce is only 56.9% black, no class-based injunction altering hiring practices is warranted before a trial on the merits.

## I

The defendant D & L operates a plant in Cleveland, Bolivar County, Mississippi, which manufactures aluminum side-trim for automobiles and employs approximately 657 employees. The only requirements for D & L employees are that they be at least eighteen years of age, be physically able to perform the work, be able to read and write, and be available to work any shift. The hiring practices followed by D & L after October 1982, the date D & L brought in a new plant manager, James Grizzard, are the focus of this dispute. These procedures were implemented by Patty Haynes when she became D & L's personnel manager in September 1981. Although the company has not hired employees since September 1985, its practice has been to hire in spurts. From October 1982 through

---

1. The promotion claims are not at issue in this    motion for preliminary injunction.

May 1985, Haynes was solely responsible for handling D & L's hiring needs.[2] When a group of positions became available, her practice was to accept a small number of applications from people who applied by telephone or who appeared at the plant gate; e.g., Haynes would accept approximately ten to twelve applications for a total of seven vacancies. When the company had enough applicants, Haynes would notify the guard at the gate to inform potential applicants that the company was no longer accepting applications, and she would discontinue accepting telephone calls from applicants. In June 1985, the company modified its hiring procedure by using the Mississippi State Employment Service (MSES) in Cleveland as the agency through which it received applications. MSES and D & L have a verbal full-service agreement under which MSES provides a pool of applicants from which D & L hires. This agreement, however, does not require D & L to use MSES's services exclusively, and D & L still makes the ultimate hiring decisions. Although the plaintiffs do not complain about the use of MSES for providing a pool of applicants, indeed they seek injunctive relief requiring it, they do maintain that even under current hiring practices, discrimination continues.

In July 1985, the plaintiffs brought this action in federal district court alleging that in October 1982 D & L began following discriminatory hiring procedures which it continues to the present date. In March 1986, the plaintiffs filed a motion to certify the case as a class action, which was granted in part by the district court. The plaintiffs next filed this motion for preliminary injunction based on the record established at the class certification hearing, and sought to enjoin D & L to continue using MSES or, should the company accept direct applications, require it to provide public notice that it is hiring and to maintain records of all applications received. The plaintiffs also sought to require D & L to hire black applicants at a rate no lower than the rate at which it hires whites, e.g., if D & L hires 80% of all its white applicants, then it must also hire at least 80% of all its black applicants; and to refrain from subjective discrimination against black applicants and would-be applicants.

At the hearing, the plaintiffs presented anecdotal evidence from blacks who were unable to apply for employment by telephone or at the gate even though D & L was purportedly hiring at the time, and from blacks who obtained application forms but were not hired. As courts have grown to expect, the parties also produced a considerable amount of statistical evidence supporting their very different positions. After considering all the anecdotal and statistical evidence introduced by both parties at the certification hearing, the court held that the preliminary injunction should be denied. The plaintiffs appeal from the district court's denial of the preliminary injunction.

## II

### A.

The issue presented in this case, broadly stated, is whether the trial court abused its discretion in denying the preliminary injunction. The evidence introduced by the plaintiffs attempts to show that from October 1982 to May 1985 D & L's procedures for accepting employment applications were discriminatory and that D & L's hiring decisions resulted and continue to result in a disproportionate percentage of whites being hired from the applicant pool. The defendants argue that the plaintiffs' statistics do not reflect the true picture of D & L's employment record but rather are only selective snapshots that inaccurately portray the effect of the hiring practices that are the subject of the injunctive request. The plaintiffs, in essence, ask for (1) mandatory use of MSES or a like service by D & L to reform the company's applicant pool, and (2) quotas to remedy D & L's discriminatory hiring decisions.

As we have noted earlier, D & L voluntarily began using MSES as its appli-

---

**2.** Although Haynes was responsible for the hiring of D & L's employees, the plaintiffs maintain that the alleged discrimination began with the arrival of Grizzard.

cant pool source in May 1985. Any injunction requiring the permanent use of MSES would of necessity be based upon the speculative premise that D & L might at some time in the future discontinue the practice. Because D & L is currently using MSES for its applicant pool, and there is no claim that this practice is discriminatory, the plaintiffs already have what the injunction seeks in this respect and counsel in effect conceded that at oral argument. Where the plaintiffs have failed to produce any evidence suggesting that the company plans to discontinue using MSES, we cannot say that the district court abused its discretion. *See Strozier v. General Motors Corp.*, 635 F.2d 424, 427 (5th Cir.1981); *McCarthy v. Briscoe*, 553 F.2d 1005, 1007 (5th Cir.1977).[3] We will therefore turn our attention to the plaintiffs' request for hiring quotas.

In putting their case for quotas before this court, the plaintiffs produced several charts and statistics demonstrating that the percentage of black applicants hired by D & L from October 1982 through September 1985 was lower than the percentage of white applicants hired during that period. For example, the records of MSES show that from late May 1985 through September 1985 the company hired seven of every eight white applicants referred to the company, but it hired only half the black applicants referred to the company during that period. Another calculation compared the percentage of new hires who were black during the 1982–85 period (46.9%) with the percentage of blacks in the blue-collar civil-

ian labor force in Bolivar County (59.4%). Finally, the plaintiffs' experts contend that the rate at which the company hired blacks as compared to whites declined sharply after October 1, 1982, after Grizzard became plant manager.[4]

As one would expect, the defendant attacked the plaintiffs' statistical arguments with its own collection of numbers and charts. D & L compared its overall black employment from 1983 through 1985 (74.6%) with the number of blacks employed in manufacturing in Bolivar County (56.9%). In addition, when that part of the total work force hired *after* 1982 was compared, the defendant's statistics showed that blacks still represented a higher percentage (59.7%) of the post–1982 D & L work force than blacks in the employed manufacturing population at large (56.9%).

The defendant also attacked the plaintiffs' underlying data as being unreliable and invalid. D & L argued that any conclusions drawn from the plaintiffs' statistics failed to take into account and reflect that there were nondiscriminatory differences between the hiring procedures before 1982 and those after 1982 that could render the statistics misleading. In addition, D & L vigorously attacked the plaintiffs' statistics as simply representing brief snapshots of D & L's hiring practices rather than representing a true picture of D & L's record.[5]

### B.

At the outset, we note that appellate review of a trial court's denial of prelimi-

3. A common tenet of law regarding the granting of preliminary injunctions is that preliminary judicial relief will be granted only in situations involving injuries that cannot be redressed properly after a ruling on the merits. *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir.1974). In the present situation, not only is D & L using MSES for its current applicant pool, but D & L has not hired new employees for more than two years.

4. Although the plaintiffs introduced anecdotal evidence purporting to show that D & L's hiring practices were discriminatory, the evidence primarily addressed D & L's practices prior to its use of MSES as the source of its applicants. For example, the evidence showed that: (1) a black applicant had not been able to obtain a

job application form from the company; (2) a black man who had been laid off by the company was told that the company was not taking applications when he tried to be rehired; (3) a black woman was told that the company was not taking any applications and was refused an application form; and (4) three black employees testified that they saw mostly white groups of applicants completing application forms while their own black friends and relatives were trying unsuccessfully to obtain application forms.

5. For example, D & L points out that the plaintiffs compared the Grizzard years (October 1982–1985) with the single year prior to his arrival and that they asserted a four-month time period to be typical of all the Grizzard years.

nary injunction is limited to an "abuse of discretion" review. *Plains Cotton Cooperative Ass'n, Lubbock v. Goodpasture Computer Service, Inc.*, 807 F.2d 1256, 1259 (5th Cir.1987); *Mississippi Power & Light v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir.1985). Thus, in order to reverse the district court, we must find that the district court's decision cannot be supported by the relevant facts and the law governing this case.

The district court, in denying the plaintiffs' motion for a preliminary injunction, properly noted that

> [t]he court's discretion in the grant or denial of a preliminary injunction must be exercised in light of the four prerequisites established in *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974), and most recently reaffirmed in *Plains Cotton Cooperative Ass'n v. Goodpasture Computer Service, Inc.*, 807 F.2d 1256, 1259 (5th Cir.1987): (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) the threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) the injunction will not disserve the public interest.

In examining the first factor, the district court credited testimony of the defendants' expert witnesses that showed that there was no significant difference between the number of blacks employed in blue-collar jobs in the county (59.4%) and the number of blacks among the employees of D & L hired from October 1982 through 1985 who were still employed by the company as of July 13, 1985 (59.7%). The trial court found that the plaintiffs had

> failed to clearly demonstrate that the defendant company engages in racially discriminatory hiring practices. The evidence shows that the percentage of blacks hired by Douglas & Lomason Company during the years Mr. Grizzard [October 1982–1985] has been plant manager mirrors or exceeds the percentage of blacks in the most relevant labor pools. Thus, plaintiffs have failed to

meet the first prerequisite necessary for preliminary injunctive relief.

In examining the second factor, the trial court recognized this court's precedent holding that irreparable injury will be presumed in employment discrimination cases such as the present one. *Middleton–Keirn v. Stone*, 655 F.2d 609, 611–12 (5th Cir. 1981). The plaintiffs therefore prevailed on the second factor.

The third factor in *Canal Authority* requires the district court to weigh the harm of an injunction and its effect upon the different parties. In considering this factor, the district court focused on the burden of requiring D & L to use MSES exclusively as a source of applicants. The district court found that the public interest would be disserved by limiting D & L to certain hiring practices when the plaintiffs have not demonstrated a valid claim to ultimate relief. The court also noted that the only injury to the plaintiffs is that a number of blacks in excess of the percentage in the relevant available labor pool will not be hired by D & L. The lower court further found that if the plaintiffs prevailed at trial, the monetary relief provided under Title VII and section 1981 would be adequate to compensate them for their injuries.

The final factor that the trial court considered in its decision to deny the plaintiffs' preliminary injunction is the public interest. The trial court weighed the plaintiffs' contention that D & L was discriminating in its hiring practices against the defendant's contention that its hiring fairly reflected the percentage of blacks in the relevant community. The court found that insufficient evidence existed to support the plaintiffs' argument, and further determined that "every member of the public who seeks work of this nature has a fair chance to apply and be selected for employment at the company." The court then determined that the plaintiffs had failed to carry their burden of persuasion in showing that injunctive relief would not disserve the public interest. Thus, the district court found that three out of the four factors militated against granting a preliminary injunction.

## C.

In considering whether to grant a preliminary injunction, we must take into account that such a remedy is extraordinary and should be treated as the exception rather than the rule. *Enterprise International, Inc. v. Corporacion Estatal Petrolera Equatoriana,* 762 F.2d 464, 472 (5th Cir. 1985). Furthermore, in examining the trial court's factual findings and conclusions of law, the plaintiffs bear the burden of showing that all four factors under the *Canal Authority* test have been established. 489 F.2d at 572. Indeed, we have said that the moving party has a *heavy* burden of proving that all four factors are satisfied. *Hardin v. Houston Chronicle Publishing Co.,* 572 F.2d 1106, 1107 (5th Cir.1978). "Thus, if the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue, and if issued, will be vacated." *Enterprise International,* 762 F.2d at 472.

The role of the circuit court is to survey the trial court's decision under an "abuse of discretion" standard. *Plains Cotton,* 807 F.2d at 1259. "The appellate court is not simply to substitute its judgment for the trial court's else that court's announced discretion would be meaningless." *Enterprise International,* 762 F.2d at 472. Unless we find that the trial court clearly abused its discretion, the lower court decision must stand. *Plains Cotton,* 807 F.2d at 1259.

In analyzing the district court's decision, we cannot say that the court was clearly erroneous in its findings of fact nor did it abuse its discretion in concluding that an injunction was not warranted. We note that during the focal period in which the alleged discriminatory policies were in place, the company's workforce was on average 74.6% black, although blacks totalled only 56.9% of the area workforce. In fact, the district court correctly found that the overall level of black employment at D & L after 1982 exceeded the level from 1978–1982.[6] The court also credited the defendant's statistical comparison of blacks employed in the blue collar jobs in Bolivar County (59.4%) with the blacks among the Grizzard hires who were still employed by D & L as of July 13, 1985 (59.7%). From all the statistical and anecdotal evidence before the trial court, the court concluded that D & L's hiring fairly reflected the percentage of blacks in the most relevant labor force. We find from our own examination of the statistical evidence that the district court's conclusion is supportable and reasonable. Thus, we conclude that under these circumstances the lower court did not abuse its discretion in refusing to grant a preliminary injunction to assure the hiring of a greater number of blacks.[7]

In deciding that the trial court's decision should be affirmed, however, we note that our decision in no way affects the merits of this case. We have simply evaluated and weighed the record evidence to the degree necessary to determine whether the trial court abused its discretion. Here, we find that the trial court acted within its discretion and therefore the plaintiffs' motion for a preliminary injunction was properly denied. The judgment of the district court is therefore

AFFIRMED.

---

6. From 1978 through 1982, the percentage of D & L's workers who were black averaged 73.2%, while the percentage from 1983–1985 averaged 74.6%.

7. We should also note that it is difficult to say that the court abused its discretion in refusing to grant *preliminary* relief enjoining arguably legitimate hiring practices on a record that shows that the respondent has not hired in two years and is not anticipating hiring in the foreseeable future.